**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

AMY S. BARNES,

        Plaintiff,                  Case Number: 07-CV-14414

v.                                        JUDGE PAUL D. BORMAN
                                                UNITED STATES DISTRICT COURT

KMART CORPORATION,

        Defendant.
_____ /

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is defendant Kmart Corporation's ("Kmart") September 29, 2008 Motion for Summary Judgment. (Doc. No. 24). A hearing on this matter was held on December 10, 2008. For the following reasons, the Court GRANTS Kmart's Motion for Summary Judgment.

**I.    BACKGROUND**

This action arises from plaintiff Amy S. Barnes's ("Plaintiff") alleged slip and fall accident that occurred at a Kmart store in Jackson, Michigan on June 16, 2007. Plaintiff claims that she slipped on water, which had pooled on the floor in front of an ice locker, causing her to fall and injure her lower back, buttocks, and left elbow, wrist and thumb.

Plaintiff, a thirty-five year old female, is a resident of Charlottesville, Indiana. (Am. Comp. ¶ 1). Kmart is a Michigan corporation with its principal place of business in Illinois. (*Id*. at ¶ 2). Kmart operates a retail store located at 3001 East Michigan Avenue, Jackson, Michigan, which is where the events at the center of this lawsuit transpired. (*Id*.).

The layout of the Jackson Kmart store is fairly typical. At the front of the store, there is a

row of cash register lanes with the each individual lane positioned perpendicular to the front wall of the store. An exit aisle runs between the cash register lanes and the front of the store and is wide enough for three people to walk down it side-by-side. (Def.'s Br. Ex. A, Pl.'s Dep. at 118–19). Various goods are displayed along the right side of the exit aisle; almost at the very end and just before the security gates, is a large cooler containing bags of ice. The ice locker is owned and maintained by Party Time, Inc., which is not a party to this dispute. (Def.'s Br. Ex. D Riker Decl. ¶ 3).

On July 16, 2007 at approximately 4:30 P.M. Plaintiff entered the Kmart store with her sister, Kelly Brown, looking to purchase a holding tank for a recreational vehicle. After discovering that the Kmart store did not stock such an item, Plaintiff and Ms. Brown, decided to purchase a bottle of cocktail mixer. (Pl.'s Dep. at 105). The pair then proceeded to the front of the store where the row of cash registers was located. (*Id*. at 105–07). Plaintiff paid for the mixer with cash, and the cashier placed the bottle in a bag.

As Plaintiff and Ms. Brown left the register lane, Plaintiff handed the bag to her sister so that Plaintiff could put the change into her pocket. (*Id*. at 119–20). Plaintiff and Ms. Brown then exited the register lane, turned left, and proceeded down the exit aisle. Plaintiff walked toward the exit on the right-hand side of the aisle, nearest to the front wall displays, and her sister walked near the center of the aisle just in front of Plaintiff. (*Id*. at 118–19). Once Plaintiff put her money away, Ms. Brown handed the bag back to Plaintiff. Plaintiff reached across her body with her right hand and took the bag from Ms. Brown. (*Id*. at 131–32). After Plaintiff grabbed the bag from Ms. Brown, she took a step with her right foot into a small puddle of water in front of the ice locker. Her foot

slipped on the water, causing her to fall to floor and land harshly on her buttocks and lower back.[1]

After falling and while still on the floor, Plaintiff noticed that there was water running down the back of her leg, that her shorts and the tail of her shirt were wet, and that there was a puddle of clear liquid on the floor. (*Id*. at 147–48). Once Ms. Brown helped Plaintiff to her feet, they looked at the floor again and could see a small puddle of water on the floor in front of the ice locker and water dripping from under the door of the ice locker. (*Id*. at 148–49, 152–53, 155–56; Def.'s Br. Ex. B, Brown Dep. at 35–36, 78–80). The portion of the puddle in the aisle was oval (or oblong) shaped, approximately six to eight inches long and four inches wide. (Barnes Dep. at 147–48). At her deposition and in response to a question asking whether anything prevented her from seeing the water on the floor before she fell, just as she had observed after falling, Plaintiff stated, "if I had been looking at my feet . . . while walking—I mean I may have noticed the water but I mean I don't look at my feet when I'm walking. Just to glance at the floor, no, I could not tell there was water." (*Id*. at 148). But Plaintiff later admitted that "[i]f I had been looking at the floor [before the accident,] . . . I probably could have seen the water on the floor" and that had she done so, she would have walked around the puddle. (*Id*. 149–150).

Neither Plaintiff nor Ms. Brown have any personal knowledge as to why the liquid was dripping, how long the liquid had been dripping on the floor, whether any Kmart employees actually saw the water or knew that the water was on the floor, or when Kmart last cleaned or inspected that

---

[1] While Ms. Brown did not observe Plaintiff actually fall, she heard Plaintiff say "oh shit" and immediately turned around to see Plaintiff on the ground with water on the floor and some water on her clothes. (Brown Dep. 30–32, 35–36, 54). Plaintiff and her sister do not know if any employees or patrons witnessed Plaintiff's fall. Furthermore, because the store surveillance cameras were not recording on June 16, 2007, there is no video surveillance of Plaintiff's fall. (Riker Decl. ¶ 9).

area of the floor. (Pl.'s Dep. at 179–81, 182; Brown Dep. at 73, 78). Ms. Brown claims, however, that after reporting the incident to Kmart, the Kmart manager went to the ice locker and appeared to push against the front door. From her vantage point, however, Ms. Brown could not determine whether the door previously had been left slightly ajar or whether the manager simply closed the door more tightly. (Brown Dep. at 84–86).

Following the incident, Plaintiff reported the incident to Kmart personnel and filled out an accident report. Plaintiff alleges that none of the Kmart employees asked her whether she needed medical attention, whether she needed an ice pack, or even whether she was hurt. (*Id*. at 151). Plaintiff and Ms. Brown then left the store. Plaintiff did not seek any medical attention until she returned home to Indiana on Monday, June 18, 2007.

## II.     ANALYSIS

### A.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B.     Premises Liability**

Under Michigan law, a prima facie case of premises liability negligence requires Plaintiff to set forth four elements: duty, breach of that duty, causation, and damages. *Fultz v. Union-Commerce Assocs.*, 470 Mich. 460, 463 (2004).

The central issue raised in the instant motion concerns Kmart's duty of care to Plaintiff. Michigan continues to abide by the three common-law classifications for persons who enter upon the land or premises of another: (1) trespasser, (2) licensee, or (3) invitee. *Stitt v. Holland Abundant Life Fellowship*, 462 Mich. 591, 596 (2000) (citing *Wymer v. Holmes*, 429 Mich. 66, 71 n.1 (1987)). "Each of these categories corresponds to a different standard of care that is owed to those injured on the owner's premises. Thus, a landowner's duty to a visitor depends on that visitor's status." *Stitt*, 462 Mich. at 596. Here, it is undisputed that Plaintiff was a business invitee of Kmart.

Under premises liability classifications, an invitee is entitled to the highest level of protection. *Id.* An invitee is someone who enter upon someone's real property by invitation with an understanding that reasonable care has been used to make the premises safe for the invitee. *Wymer v. Holmes*, 429 Mich. 66, 71 n.1 (1987). The Michigan Supreme Court has adopted the Restatement's definition of the duty of care a possessor owes to its invitees:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect against the danger.

*Quinlivan v. Great Atlantic & Pacific Tea Co.*, 395 Mich. 244, 258–59 (1975) (quoting Restatement (Second) of Torts § 343). Specifically, a storekeeper is under a duty to

> Provide reasonably safe aisles for customers and he is liable for injury resulting from an unsafe condition either caused by the active negligence of himself and his employees or, if otherwise caused, where known to the storekeeper or is of such a character or has existed a sufficient length of time that he would have had knowledge of it.

*Serinto v. Borman Food Stores*, 380 Mich. 637, 640–41 (1968) (quoting *Carpenter v. Herpolsheimer's Co.*, 278 Mich. 697 (1936)). Thus, Kmart can only be found liable if it (1) actively caused the water to be spilled on the floor or (2) knew or should have known of the pooled water—i.e., had actual or constructive notice of the water.

Because Plaintiff has not brought any evidence from which a reasonable juror could infer that Kmart caused the liquid to be on the floor or that Kmart had actual or constructive knowledge of the liquid on the floor, the Court grants summary judgment to Kmart.

Plaintiff argues that Kmart should have been aware of the pool of water, as it was within the view of store employees—presumably those at the cash register lanes. Plaintiff also argues that Kmart should have been aware of the risk that an ice locker poses to its customers: "The water was nearby an ice [locker]. The store should have expected that ice melts and even if ice was not the source of the poll [sic] of water the area should have been under observation for dangers such as largely unobservable puddles of water." (Pl.'s Resp. 12).

While the pool of water was near the entrance and within the proximity of the checkout lanes, Plaintiff has not brought forth any evidence demonstrating that any of Kmart's employees noticed the water on the floor. In her deposition, Plaintiff admitted that she had no knowledge of whether Kmart's employees saw the water. In fact, Plaintiff and her sister were even unsure if any of the employees even witnessed Plaintiff's fall. Furthermore, according to Plaintiff's own testimony, the puddle of water was not very large, measuring roughly six to eight inches long and only four inches wide. Even assuming that the puddle was slightly larger before Plaintiff fell and

soaked up some of the water with her clothes, a puddle of that size likely would have been difficult to see from a distance.

Plaintiff also has not brought forth any evidence indicating that Kmart had constructive notice of the puddle. That the water was pooled on the floor in front of the ice locker is not sufficient evidence to show that the condition had been there for a length of time. Ice could have fallen from the locker and melted over time, but Plaintiff has not brought forth any evidence indicating that this was the case. To the contrary, in her deposition, Plaintiff seemingly implies that the pool was a result, at least in part, of water dripping from the ice locker onto the floor. Regardless, Plaintiff stated that she did not know whether the puddle of water was caused by the water dripping from the locker or by something else; how long the puddle had been on the floor; and when Kmart last cleaned or inspected that area of the floor.

The declaration of store manager Aaron Riker provides further evidence that Kmart had no notice of the pooled water. Riker claims that after Plaintiff reported her fall to Kmart personnel, he inspected the ice locker and surrounding area but did not see any signs of leakage from the ice locker. In addition, Riker claims that that the Jackson Kmart's premises, including the area by the ice locker, are regularly inspected and maintained by Kmart personnel and that based upon his investigation of the matter, water was not present, and water was not leaking from the ice locker, the last time that Kmart personnel inspected the area before the incident.

Michigan courts require more than mere speculation or conjecture as to a defendant storekeeper's actual or constructive notice. For instance, in *Serinto v. Borman Foods Stores*, the Michigan Supreme Court addressed the sole issue of whether there was enough evidence to raise a question of actual or constructive notice on the part of the defendant for the court to submit the question to the jury. 380 Mich. 637, 640 (Mich. 1968). In that case, a woman shopping at a grocery

store slipped on a broken jar of mayonnaise in one of the store aisles. *Id.* at 641. The woman argued that since she was in the store for roughly forty-five to fifty minutes before the fall and heard no sound resembling the jar breaking, the broken jar must have been on the floor before she entered the store. *Id.* From this, she asked the court to find that the defendant had constructive notice of the broken jar's existence. *Id.* The court instead affirmed the Michigan Court of Appeals holding that there was insufficient evidence to submit the constructive notice question to the jury. *Id.* at 643–44.

Similarly, in *McCune v. Meijer, Inc.*, the Michigan Court of Appeals affirmed the trial court's grant of summary judgment in favor of the defendant storekeeper because the plaintiff could not prove that the defendant had actual or constructive notice of the dangerous condition. 156 Mich. App. 561 (1987). There, the plaintiff slipped and fell on a small puddle of oil, which was surrounded by a larger oil stain, in the defendant's parking lot. *Id.* at 562. Plaintiff contended that because the oil stain was larger than the actual puddle, the stain must have resulted from the evaporation of the oil spill, and that because oil evaporates slowly, the oil spill must have been of a long-standing duration, which means that defendant had constructive notice of the oil. *Id.* at 562–63. The court, however, found that the plaintiff's evaporation theory was based upon nothing more than speculation and conjecture. *Id.* at 563. The plaintiff had not brought forth any evidence to support it.

To the extent that Plaintiff argues that the critical issue is not whether Kmart had constructive notice of the particular spill but rather whether Kmart knew or should have known that there was or could be a problem with water dripping from the ice locker, Plaintiff's argument is based solely upon speculation and conjecture. Plaintiff has not submitted any testimony or other evidence tending to show that Kmart had any problems whatsoever with the ice locker before Plaintiff's incident. Instead, Plaintiff offers the testimony of her sister who testified that after the

store manager discovered the water on the floor, he went over and pushed on the door. She claimed that she thought that the door gave a little because it was not sealed. While this certainly puts Kmart on notice going forward, this testimony does not create a genuine issue of material fact as to whether Kmart caused the alleged dangerous condition or had any notice of it *prior* to incident. Indeed, Riker's declaration states that prior to Plaintiff's incident on June 16, 2007, there never had been any incident or reported incident of water or other liquid dripping from the ice locker.

Here, like the plaintiffs in *Serinto* and *McCune*, Plaintiff has not brought forth any evidence showing that Kmart had either caused the alleged condition or had actual or constructive knowledge of it. Thus, Plaintiff has not met her burden of establishing her prima facie case of negligence.

### III.     CONCLUSION

Accordingly, the Court **GRANTS** Kmart's Motion for Summary Judgment under Federal Rule of Civil Procedure 56(c).

 **SO ORDERED**.


                                                    S/Paul D. Borman
                                                    PAUL D. BORMAN
                                                    UNITED STATES DISTRICT JUDGE

Dated:  December 30, 2008




CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on December 30, 2008.

10

S/Denise Goodine
Case Manager